STADLER and another vs. THE CITY OF MILWAUKEE.

MUNICIPAL CORPORATION: MILWAUKEE: DAMAGES. (1) *Right to damages for change of grade of street, purely statutory.* (2) *Rule of damages under charter stated.* (3) *Damages for use of mill during change of grade, disallowed.*

The charter of Milwaukee (ch. 10, sec. 18) declares that where the *grade of a street,* once established, is afterwards *changed,* " all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot, or parcel of land, or tenement, which may be affected or injured " in consequence of such alteration. *Held,*

   1. That the right to damages in such a case is *purely statutory.*

   2. That the statute grants such damages only to the *owner* of the land or building injured, and only for *injuries to the land or building itself,* and costs or charges necessary to restore the same to their

former relative condition and usefulness; and *not* for injury to or suspension of the *trade* carried on upon the premises.

3. That in an action under said charter for damages to *mill property* in consequence of a change in the established grade of a street, it was error to include in the judgment for damages a sum awarded by the jury "on account of the *loss of the use of the mill* during the raising and adapting of the same to the new grade."

APPEAL from the Circuit Court for *Kenosha* County.

This was one of several similar actions brought against the *City of Milwaukee*, under section 18, chapter 10 of the city charter, to recover damages alleged to have been done to plaintiffs' property by reason of a change of grade in the street on which the premises were situated. Plaintiffs owned the lot in question, on which they had erected and were operating a barley mill. The grade of the street having been raised over four feet by an ordinance of the common council, plaintiffs claimed that by reason of the change of grade they were obliged to raise their mill and fill their lot to conform to the new grade. The principal point in controversy was as to plaintiffs' right to damages for loss of the use of the mill during the time required for raising it and adjusting it to the new grade. Upon this point, the court charged the jury as follows : "If you find it necessary to raise the mill, I think the plaintiffs are entitled to the value of its use during the time you find it will necessarily be idle, while the mill and machinery are raised and adjusted." The court also instructed the jury that they might state specially in their verdict the amount of damages, if any, which they might find for the value of the use of the mill while idle. The jury returned a verdict assessing plaintiffs' damages at $2,444.35, of which sum they awarded $448 on account of the loss of the use of the mill as above stated. Judgment upon the verdict; from which defendant appealed.

*Emil Wallber*, City Attorney, for appellant, insisted that the court erred in admitting evidence to show the length of time

during which the mill would be idle, and in allowing damages for such period. Plaintiffs' only right to damages is under sec. 18, ch. 10 of the charter, since at common law a municipal corporation is not liable to property holders for damages arising from a change of grade. The provision of the charter in question is therefore in derogation of the common law, and must receive a strict construction. See Dillon on Mun. Corp., § 782, and cases there cited. This court has already construed the provision of the charter in question in harmony with this principle. *Church v. City of Milwaukee*, 31 Wis., 512. Under the rule of damages there stated no damages on account of loss of time or profit can be recovered. The charter gives no remedy except for damages to the lot and premises, and, under the construction of this court, for the expense of putting the premises in the same relative position to the street as before. Of any other damage or loss not a word is said. Damage to a man's lot is one thing, damage to his business another thing. For injury to the one the charter gives him a remedy; for injury to the other it gives him none. The charter contemplates only permanent damages and permanent loss, not temporary damages and temporary loss. *Church v. City of Milwaukee*, *supra*; *Stowell v. City of Milwaukee*, 31 Wis., 523.

*Butler & Winkler*, for respondents, argued that the use of the mill would necessarily be interrupted while it was being raised. This is as certainly a damage arising from the change of grade as is the expense and cost of raising the mill. The statute provides that the city shall pay "all damages" arising therefrom. The court very fairly submitted the question of loss of time and use of the mill to the jury; and they having found in favor of plaintiffs, no doubt can remain that the necessary interruption of the mill is a proper item of damages.

DIXON, C. J. The cases of *Ricket v. The Metropolitan Railway Co.*, 5 Best & Smith, 149, 156, and same case in the House

of Lords, L. R., 2 H. L., 175, and *Bigg v. Corporation of London*, L. R., 15 Eq.Cas., 376 ; *S. C.*, 5 Eng. R. (Moak), 887, go far to elucidate and correctly settle the question of damages presented in this case. The question here is upon the right of the plaintiffs to recover damages for the use of their barley mill during the time the jury should find it would necessarily be idle, while the mill and machinery were being raised and adjusted to the new grade. The court instructed the jury that the plaintiffs were entitled to the value of such use, and the jury, finding specially for the plaintiffs on that subject, "awarded $448 on account of the loss of the use of the mill during the raising and adapting of the same to the new grade." The case is one of those arising under section 18, ch. 10 of the charter of the city, which has frequently been before this court for consideration, but never upon any such point as this. That section provides, that where the grade of the street has once been established and is afterwards changed, "all damages, costs and charges arising therefrom shall be paid by the city to the owner of any lot or parcel of land or tenement, which may be affected or injured in consequence of the alteration of such grade." The point to be resolved is, whether the damages sustained by the owner or occupant of the adjoining tenement, by reason of inconvenience in the transaction of his business, or the interruption or total suspension of it, or of the loss of his trade, custom or profits necessarily caused by the making and carrying on of the work of public improvement, and while it progresses and until completion, or so caused by the work of restoring the adjacent premises to the same relative position or condition as before the change of grade, are such as the statute contemplates, and for which compensation must be made by the city. The authorities above cited, which involved the construction of statutes similar in provision and principle to the foregoing, are quite clear and decisive that such damages are not recoverable. And such is and was the opinion of this court in the present case

before those authorities came to its attention in the investigation of another question.

It is of course well understood that, but for the statute, no damages whatever could be recovered from the city in such case. The city being authorized by law to change the grade of the street, and the same being for a public purpose and for the public good, and consequently a lawful act, it would follow that no claim for damages of the kind mentioned in the statute could attach against the city, unless expressly sanctioned and provided for by act of the legislature, or by ordinance of the common council. This principle has been several times recognized by this court, and is ably discussed in a recent case in New York, where the court held that depreciation in the value of property, resulting from alterations and changes made in the neighborhood for a public purpose, under authority of the legislature, in general furnishes no ground of action to the owner of the damaged property, while such property remains intact. *Coster v. The Mayor*, 45 N. Y., 299.

The right to damages being purely statutory, the question, what damages are recoverable, or what losses or injuries are to be compensated by the city, becomes one of mere statutory construction. The English courts hold, under like statutes, that only what is there aptly termed "structural damage" is recoverable against the corporation. In *Ricket's Case* it was held that the loss of custom to and trade at a public house, which fell off in consequence of the temporary obstruction of the streets and passages leading to the house and which rendered it inaccessible during the time the work of improvement was progressing, constituted no cause of action or ground of complaint under the statute. And in *Bigg's Case*, where the claim was for damage done to the plaintiff's cellar situated in or under the street, and to his property in it, and also for depression or loss of the trade carried on by the plaintiff, and where the corporation, compensation being made to the owners of property injured, had power

by act of parliament to stop up, alter or use, for the purpose of the authorized public works, certain specified streets, and among them the street in question, it was held that the plaintiff was not entitled to be compensated for the indirect injury to his trade resulting from the diversion of traffic caused by the authorized act of lowering the roadway, but only for direct structural injury occasioned by the interference with his cellar. And what is there understood by structural damage or injury is made very clear by the remarks of Chief Justice ERLE in *Ricket's Case*, 5 B. & S., 162. Speaking of the claim for damages there set up, he says: "But, secondly, even if the action (at common law) would lie for this obstruction, whereby the plaintiff was damaged in his trade, still such damage did not accrue to the plaintiff in his capacity of owner of an estate in land, and the title to compensation to which the statute relates is only in respect of land, or an interest therein, which has been injuriously affected. Here the plaintiff has a term in the house, and the point is, whether the house is shown to be injuriously affected because the profits of the plaintiff's trade carried on therein are diminished by reason of the obstruction. The trading carried on in the house is entirely distinct from the estate in the house; the procuring of refreshment and the sale thereof, and the profit thereon, may either continue or cease without affecting the plaintiff's interest in the house. If his license were taken away, the business would cease, but the house and the estate therein would be the same as before; and it is clear that an estate in the house is not essential to the sale of refreshment, as many kinds are sold in the street by persons having no interest in the land where they sell. The statute limited the liability to compensation in respect of injuries to definite rights of a permanent nature, that is, to rights in land."

Now it seems to us that this is a just and fair commentary on the provisions of our own statute, which appears to have been very carefully and guardedly drawn to accomplish the identical results arrived at by the English statutes, namely, of

compensation to the owner of the adjacent estate, in his capacity of owner, for injuries caused to his land, or land and buildings, by permanently lessening their value and impairing or destroying their usefulness, unless they shall be restored to their former relative condition at great expense on his part. Such seems to be the obvious scope and purpose of the statute, the words of which are: "All damages, costs and charges arising therefrom shall be paid by the city to the *owner* of any lot or parcel of land or tenement, *which may be affected or injured* in consequence of the alteration of such grade." It is of the owner, and of the injury sustained by him as such, that the statute speaks, and not of him as the tenant or occupant of the premises, or person in possession carrying on any particular branch of trade or manufacture which may be interrupted or destroyed by the alteration of the grade. It is also to the damages, costs and charges to which the owner, as such, may be subjected, in respect of any lot, parcel of land or tenement belonging to him and which may be injuriously affected, that the words of the statute are plainly directed. Nothing like damages for injury to or suspension of his trade or business carried on upon the premises are hinted at or given. It is, as expressed by the English courts and judges, merely structural damage, or costs and charges in that nature, which are provided for; and we are satisfied that no other can be recovered against the city.

It follows from these views that the judgment appealed from, which includes the entire damages assessed for the plaintiffs, must be reversed, with costs, and the cause remanded with directions to enter judgment in their favor only for the gross sum given by the jury less the sum of $448 specially found and assessed by them for the loss of the use of the mill during the raising and adapting of the same to the new grade, as stated in the verdict.

*By the Court.* — It is so ordered.