**2020 WI App 24**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP2383

†Petition for Review filed

Complete Title of Case:

**UNITED AMERICA, LLC,**

**†PLAINTIFF-RESPONDENT,**

**V.**

**WISCONSIN DEPARTMENT OF TRANSPORTATION,**

**DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | April 28, 2020 |
| Submitted on Briefs: | November 5, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Maura FJ Whelan*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joseph R. Cincotta*, Milwaukee. |

## COURT OF APPEALS
## DECISION
## DATED AND FILED

### April 28, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.** **2018AP2383** | **Cir. Ct. No. 2014CV78** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

UNITED AMERICA, LLC,

    PLAINTIFF-RESPONDENT,

  V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Lincoln County: JAY R. TLUSTY, Judge. *Reversed.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 SEIDL, J. State law provides that when a governmental entity exercises its police power to change the grade of a street or highway, and it does so without also taking any land, an owner of land abutting the street or highway project may make "a claim for any damages to said lands occasioned by such change of

grade." WIS. STAT. § 32.18 (2017-18).[1] The Wisconsin Department of Transportation (DOT) appeals a money judgment entered in favor of United America, LLC, which was premised on United America's argument that "any damages to said lands" encompasses nonstructural damages. More specifically, United America argued, and the circuit court agreed, that § 32.18 allows a qualifying landowner to recover damages for the reduction in a property's commercial value resulting from a change-of-grade project. The DOT argues this interpretation of § 32.18 is erroneous, and that only structural (i.e., physical) damage to lands is compensable under the statute.

¶2  We conclude, as a matter of first impression, that the phrase "any damages to said lands" in WIS. STAT. § 32.18 refers solely to structural damages. We therefore reverse the money judgment in favor of United America.

## BACKGROUND

¶3  In 2004, United America purchased a parcel of land in Lincoln County ("the Property"). The Property directly abuts U.S. Highway 51 on its eastern boundary and Northstar Road on its northern boundary.[2] The Property has no means of directly accessing Highway 51; it has direct vehicular access only to Northstar Road.[3]

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The portion of U.S. Highway 51 in the vicinity of Northstar Road has been designated a "freeway," pursuant to WIS. STAT. § 84.25, since 1972.

[3] In 1994, the DOT purchased from United America's predecessor-in-interest all rights of access from the Property to U.S. Highway 51.

¶4      Until 2013, United America operated a gas station and convenience store on the Property.  In May of that year, the DOT began a highway safety improvement project ("the Project") at the intersection of Highway 51 and Northstar Road.

¶5      Prior to the Project, Highway 51 and Northstar Road met at an at-grade intersection.  This intersection allowed vehicular traffic to directly transition from one roadway to the other.  After the Project was completed in October 2013, however, Northstar Road crossed Highway 51 at a grade-separated crossing (i.e., via an overpass).[4]  As a result, the direct flow of traffic from Highway 51 to Northstar Road ceased and vehicular access to the Property from Highway 51 became circuitous, at best.[5]  Consequently, United America lost approximately ninety percent of its business.

¶6      United America subsequently made an administrative claim for damages under WIS. STAT. § 32.18.[6]  After the DOT denied that claim,

_____

[4] This grade-separated crossing has no vehicular access points either to or from Highway 51 (in other words, the overpass has no on- or off-ramps).

[5] In its response brief, United America provides the following, undisputed summation of the route a vehicle must now take to access the Property from Highway 51:  "A driver cannot reach the [Property] from [Highway] 51 unless they travel over 1.8 miles north, take another exit, and then double back more miles through Town roads.  Trying to access heading south bound is even more circuitous."

[6] WISCONSIN STAT. § 32.18 provides, in relevant part:

> Where a street or highway improvement project undertaken by the department of transportation … causes a change of the grade of such street or highway … but does not require a taking of any abutting lands, the owner of such lands at the date of such change of grade may file with the department of transportation … a claim for any damages to said lands occasioned by such change of grade.

3

United America brought a civil claim in the circuit court for damages under the same statute.

¶7     Prior to trial, United America submitted a report from its expert appraiser, Michael Marous.  Marous concluded that "as a result of the construction of the bypass and of the resultant loss of ready accessibility from [Highway 51]," the Property's value had been reduced by $528,500.

¶8     The DOT moved to exclude Marous' report.  It argued, in relevant part, that "damages based on a theory [of] lost profits should not be recoverable in a claim for damages under WIS. STAT. § 32.18."  The circuit court denied this motion, and the matter proceeded to a bench trial, at which Marous testified consistent with his report.

¶9     The parties submitted briefs after trial, in which the DOT again argued that United America was not entitled to any damages under WIS. STAT. § 32.18.[7] The circuit court rejected this argument, concluding that "[b]y using the word 'any' in defining damages, the enactment of § 32.18 appears to allow for comprehensive damages and does not restrict the type of damages that can be claimed by the select type of property owner to which § 32.18 is applicable."  The court therefore entered judgment in favor of United America in the amount of $528,500, plus costs.  The DOT now appeals.

---

[7] We note that United America did not argue in the circuit court, nor does it argue on appeal, that the Project caused structural or physical damage to the Property.

## STANDARD OF REVIEW

¶10     The central issue in this case is whether WIS. STAT. § 32.18 allows a qualifying landowner to recover nonstructural damages occasioned by a change-of-grade highway project.  As such, this case presents an issue of statutory interpretation, which is a question of law that we review de novo.  ***Otterstatter v. City of Watertown***, 2017 WI App 76, ¶20, 378 Wis. 2d 697, 904 N.W.2d 396.  The purpose of statutory interpretation is to discern the legislature's intent.  ***Id.***  We will give statutory language its common, ordinary and accepted meaning, except technical or specially defined words will be given those respective meanings.  ***Id.***  Further, we interpret statutory language in the context in which it is used, in relation to the language of surrounding or closely related statutes, and in a reasonable manner to avoid absurd or unreasonable results.  ***Id.***

## DISCUSSION

¶11     As an initial matter, we note that when the State changes the grade of an existing controlled-access highway or freeway, it does so by exercising its police power.  *See* WIS. STAT. §§ 84.25(3) and 84.295(6); *see also* ***Jantz v. DOT***, 63 Wis. 2d 404, 409-10, 217 N.W.2d 266 (1974).[8]  "[I]njury to property resulting from the exercise of the police power of the state does not necessitate compensation." ***Surety Sav. & Loan Ass'n v. DOT***, 54 Wis. 2d 438, 443, 195 N.W.2d 464 (1972).  Even when compensation is not required, however, it may be "expressly sanctioned

---

[8] To be sure, the DOT could also concurrently exercise its power of eminent domain to take lands in connection with a change-of-grade project.  *See* ***118th St. Kenosha, LLC v. DOT***, 2014 WI 125, ¶31, 359 Wis. 2d 30, 856 N.W.2d 486 ("Eminent domain can occur contemporaneously with the exercise of police power.").  United America does not argue, however, that the DOT did so in connection with the Project.

and provided for by act of the legislature." ***Stadler v. City of Milwaukee***, 34 Wis. 98, 102 (1874).

¶12     The parties agree that our legislature has chosen to do just that (i.e., provide a means of compensation for qualifying landowners[9] who suffer damages as a result of the State's exercise of its police power) through its enactment of WIS. STAT. § 32.18.    They sharply dispute, however, the scope of damages made compensable under that statute.

¶13     The DOT, relying on the plain language of WIS. STAT. § 32.18— which, again, provides that a qualifying landowner may only make a claim for "any damages *to said lands* occasioned by [a] change of grade"—argues that only physical or structural damage to land itself is compensable.   ***Id.*** (emphasis added). United America responds that "'any damages' means 'any damages'" and that "[t]he word 'Any' does not lend itself to being read and applied as [only] 'any structural damages.'"   For the reasons that follow, we agree with the DOT.

¶14     To begin, United America's proposed interpretation asks us to completely ignore our legislature's use of the words "to said lands" in WIS. STAT. § 32.18.[10]   We are not at liberty to do so.   Instead, we must "assume that the legislature used all the words in a statute for a reason."   ***State v. Matasek***, 2014 WI

---

[9] It is undisputed that United America is a qualifying landowner under the statute, as it owns lands abutting the Project and no lands were taken by the State in connection with the Project.

[10] Indeed, United America quite literally does just that in its response brief.  In a presage to its later flawed argument, United America omits the words "to said lands" in purporting to quote WIS. STAT. § 32.18 when stating the issue for review.  Specifically, United America writes:  "Wis. Stats. § 32.18 provides that property owners abutting DOT construction projects may pursue a cause of action for *'any damages occasioned by a change of grade'* arising due to the project." (Emphasis added.)

27, ¶18, 353 Wis. 2d 601, 846 N.W.2d 811. Generally, every word that appears in a statute should contribute to the statute's construction. *See id.*

¶15 Turning to the actual language of WIS. STAT. § 32.18, and giving meaning to each word the legislature chose to use in the statute, we conclude that the only damages compensable under the statute are damages to land.[11] Stated differently, a qualifying landowner may only make a claim for structural or physical damages to his or her lands under § 32.18; the landowner cannot make a claim for any consequential damages such as lost profits or a diminution in property value caused by the change-of-grade project.

¶16 This conclusion follows because our legislature explicitly chose to make "any damages to said *lands*" compensable under the statute; it did not choose to make "any damages to said *landowner*" compensable. *See* WIS. STAT. § 32.18 (emphasis added). United America's interpretation would have us rewrite the statute to say the latter. We may not rewrite statutes; we must simply interpret them as they are written. *See **Rsidue, L.L.C. v. Michaud***, 2006 WI App 164, ¶24, 295 Wis. 2d 585, 721 N.W.2d 718.

¶17 Lest there be any doubt about our reading of the plain meaning of WIS. STAT. § 32.18, we observe that three additional principles of statutory construction confirm our interpretation. First, we must presume when the legislature enacts a

---

[11] For example, a highway improvement project that does not involve a taking of land may cause physical or structural damage to land by causing flooding, by destabilizing soil, or by depositing excess fill. *See, e.g.*, ***Kohlbeck v. Reliance Const. Co.***, 2002 WI App 142, ¶23, 256 Wis. 2d 235, 647 N.W.2d 277 (flooding); ***Wisconsin Power & Light Co. v. Columbia Cty.***, 3 Wis. 2d 1, 4, 87 N.W.2d 279 (1958) (destabilizing soil); ***Olen v. Waupaca Cty***., 238 Wis. 442, 444-45, 300 N.W. 178 (1941) (excess fill). Again, we note United America does not assert that the Project caused any such structural damage to the Property.

statute that it acts with knowledge of existing case law. ***Czapinski v. St. Francis Hosp., Inc.***, 2000 WI 80, ¶22, 236 Wis. 2d 316, 613 N.W.2d 120.

¶18 Our legislature enacted WIS. STAT. § 32.18 in 1960. *See* 1960 Wis. Laws, ch. 639, § 1. This enactment came well after our supreme court's decision in ***Stadler***, which interpreted a City of Milwaukee ordinance containing language substantially similar to § 32.18. Specifically, the ordinance interpreted by the ***Stadler*** court provided that

> where the grade of [a] street has once been established and is afterwards changed, "all damages, costs and charges arising therefrom shall be paid by the city to the owner of *any lot or parcel of land or tenement, which may be affected or injured in consequence* of the alteration of such grade."

***Stadler***, 34 Wis. at 101 (citation omitted; emphasis added).

¶19 The plaintiffs in ***Stadler*** brought their claim under this ordinance in an effort to recover profits lost due to the temporary shutdown of their mill. ***Id.*** This shutdown undisputedly was caused by a change-of-grade project the city completed on the street abutting the land where the mill was located. ***Id.***

¶20 Our supreme court held that the ordinance at issue did not authorize the recovery of lost profits caused by the change-of-grade project. ***Id.*** at 103-04. The court reasoned:

> Now it seems to us that this is a just and fair commentary on the provisions of [the ordinance], which appears to have been very carefully and guardedly drawn to accomplish the identical results arrived at by the English statutes, namely, of *compensation to the owner of the adjacent estate, in his capacity of owner, for injuries caused to his land, or land and buildings, by permanently lessening their value and impairing or destroying their usefulness, unless they shall be restored to their former relative condition at great expense on his part.* Such seems to be the obvious scope and purpose of the statute …. It is of the owner, and of the injury

> sustained by him as such, that the statute speaks, and not of him as the tenant or occupant of the premises, or person in possession carrying on any particular branch of trade or manufacture which may be interrupted or destroyed by the alteration of the grade. It is also to the damages, costs and charges to which the owner, as such, may be subjected, in respect of any lot, parcel of land or tenement belonging to him and which may be injuriously affected, that the words of the statute are plainly directed. *Nothing like damages for injury to or suspension of his trade or business carried on upon the premises are hinted at or given. It is, as expressed by the English courts and judges, merely structural damage, or costs and charges in that nature, which are provided for; and we are satisfied that no other can be recovered against the city.*

*Id.* (emphases added).

¶21     Again, we must presume that our legislature was aware of the *Stadler* decision when it enacted WIS. STAT. § 32.18. Consequently, our legislature was aware that our supreme court had held that when a regulation concerning a change-of-grade construction project spoke of damages to "lands," that "[n]othing like damages for injury to or suspension of [a landowner's] trade or business carried on upon the premises are hinted at or given." And, further, that "merely structural damages" would be "provided for" by that regulation.

¶22     Second, we must interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110. Notably, one of the statutes surrounding WIS. STAT. § 32.18, WIS. STAT. § 32.09 (which governs the determination of just compensation in eminent domain proceedings), addresses the type of damages United America seeks to recover here. Specifically, § 32.09 expressly provides for diminution in value damages in both total and partial takings cases. *See* WIS. STAT. §§ 32.09(5) (total takings); 32.09(6) (partial takings).

9

¶23    Moreover, WIS. STAT. § 32.09 also explicitly bars damages for diminution in property value when the government exercises its police power: "If a depreciation in value of property results from an exercise of the police power, even though in conjunction with the taking by eminent domain, no compensation may be paid for such depreciation except as expressly allowed in subs. (5) (b) and (6) and s. 32.19." Section 32.09(4).  By both expressly providing for diminution of property value in takings cases and then expressly barring such damages in police power cases—with three statutory exceptions, of which WIS. STAT. § 32.18 is not included as such an exception—our legislature has clearly shown that when it wants to provide for nonstructural damages, it is capable of doing so.  Its failure to do so in § 32.18 further supports our conclusion that only structural damages are compensable under that statute.

¶24    Third, we must interpret statutes so as to avoid absurd results.  *Kalal*, 271 Wis. 2d 633, ¶46.  It would be absurd to conclude that a landowner could recover for the diminution in value of his or her property under WIS. STAT. § 32.18, because the diminution in value of any given property will always depend upon the use to which the property is put, and it will vary greatly between similarly situated landowners who put their lands to different uses.  If the DOT (or any other governmental entity) had to consider the use to which every property adjoining a change-of-grade road project is put, or could be put, it would be all but impossible to gauge the financial impact of any such project.

¶25    For example, two parcels of land could be located on opposite sides of the same at-grade intersection, identical in every respect except that one parcel is used by its owner as farmland and the other is used by its owner for a convenience store.  If the DOT chose to transform the at-grade intersection to a grade-separated intersection (without taking land from either owner), the owner of the former parcel

10

of land would likely suffer minimal change in the value of his or her property, while the latter owner could potentially suffer a substantial reduction in value (as United America claims here). We conclude that interpreting WIS. STAT. § 32.18 to require the DOT to factor such calculations into its decision-making process when undertaking a project that does not require it to take any land would lead to absurd and incongruous results.

¶26 As stated above, United America fails to acknowledge the presence of the words "to said lands" in WIS. STAT. § 32.18 or in any way develop an argument that those words do not limit the type of damages for which the statute permits compensation. Instead, it advances various other arguments as to why it is entitled to recover for the diminution of value to its property caused by the Project. None persuade us.

¶27 First, United America argues our supreme court "found" in *Jantz* that "because there had not been a taking, [WIS. STAT.] § 32.18 applied to recover loss of access and other damages." United America misreads *Jantz*. As our supreme court later explained, the landowner in *Jantz* "brought suit under WIS. STAT. § 32.09(6) to recover compensation for [a] partial taking." *118th St. Kenosha, LLC v. DOT*, 2014 WI 125, ¶48 n.16, 359 Wis. 2d 30, 856 N.W.2d 486. After deciding that Jantz did not have a valid claim under § 32.09(6) because the change-of-grade project at issue there, as here, did not involve a taking, the *Jantz* court then "noted that Jantz *perhaps may have been* entitled to recover damages under WIS. STAT. § 32.18 for harm to her property caused by [a] change in grade." *118th St. Kenosha*, 359 Wis. 2d 30, ¶48 n.16 (emphasis added). Because Jantz did not bring her suit under that statute, however, "those damages were unavailable." *Id.* Given this limitation in *Jantz*, we reject United America's argument that it controls the outcome here.

11

¶28	Second, relying on a series of takings cases brought under WIS. STAT. § 32.09, United America contends that "[t]he case law addressing the nature of damages available in a just compensation case shows that diminution in value is a typical type of damage that is sought and awarded in such claims." *See, e.g.*, *Hoekstra v. Guardian Pipeline, LLC*, 2006 WI App 245, ¶13, 298 Wis. 2d 165, 726 N.W.2d 648; *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶14, 281 Wis. 2d 173, 696 N.W.2d 194. But, as already explained, the fact that the statutes governing takings cases actually provide for diminution in value damages, while WIS. STAT. § 32.18 does not, counsels against concluding that such damages are available under § 32.18. In addition, because § 32.09 employs different language and provides for different types of damages than § 32.18, the case law interpreting § 32.09 provides no guidance on the meaning of the phrase "any damages to said lands" in § 32.18.

¶29	Third, United America argues that "the freeway statute in [WIS. STAT.] § 84.295 is applicable to this case and could therefore provide for loss of access damages." This argument fails for two reasons. First, "even if a highway construction project results in damages that are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute." *118th St. Kenosha*, 359 Wis. 2d 30, ¶33. Second, despite United America's repeated assertions that this is a "loss of access" case, United America's access rights remained the same both before and after the Project: the Property had a point of access to Northstar Road, not to Highway 51.

¶30	To be sure, prior to the Project, United America's access to Northstar Road indirectly gave it convenient vehicular access to Highway 51 via the at-grade intersection of those two roadways, and that access is now considerably less convenient. Under Wisconsin law, however, a landowner does not have any

"property interests … in [a] road intersection." ***Schneider v. State***, 51 Wis. 2d 458, 463, 187 N.W.2d 172 (1971).

¶31   At one time the Property did have direct access rights to Highway 51. But the Property's former owner sold those rights to the DOT in 1994. The prior owner was therefore compensated for the loss of the access rights to Highway 51. Although United America makes a cursory statement that the former owner received "very little" compensation for those rights, any issues related to that transaction are not before us. Accordingly, all of United America's arguments based on a "loss of access" fail.

## CONCLUSION

¶32   In sum, we conclude that the only damages compensable under WIS. STAT. § 32.18 are structural damages to land. As United America failed to prove it suffered any such damages as a result of the Project, the circuit court erred in granting a money judgment in favor of United America.

*By the Court.*—Judgment reversed.