Stamnes v. Milwaukee & State Line R. Co. 131 Wis. 85.

STAMNES and others, Respondents, vs. MILWAUKEE & STATE
LINE RAILWAY COMPANY, Appellant.

*February 19—March 19, 1907.*

*Railroads: Condemnation of mortgaged land: Award: Security not
to be impaired: Evidence: Agreement by owner to convey: Ad-
mission as to value: Waiver.*

1. Upon condemnation of a right of way for a railroad over mort-
gaged land the mortgage security is not to be impaired or di-
minished, and there must be a single award covering the
entire injury to the estate, including both the value of the
strip taken and the diminution, by reason of such taking, in
the value of the land not taken.

2. An agreement by the owner of the land, made after the con-
demnation proceedings were begun, to convey the right of way
and release all claims for damages in consideration of a cer-
tain sum was not admissible in evidence in order to bar an
award of a greater sum. Such an admission as to value could
not, in the condemnation proceeding, affect the right of the
owner without also affecting the right of the mortgagee, and,
not being admissible against the latter, it was not admissible
at all.

[3. Whether by going on with the condemnation proceedings after
obtaining such agreement the railway company waived its
rights thereunder as against the owner, and whether upon
being compelled to pay an award greater than the sum named
in the agreement the company would have any remedy as
against the owner or the land, not determined.]

APPEAL from a judgment of the circuit court for Racine
county: E. B. BELDEN, Circuit Judge. *Affirmed.*

Proceedings to determine the compensation to be paid on
account of land taken for railway purposes.

Appellant railway company being desirous of constructing
its railway track across the premises of respondent *Jacob
Stamnes,* which were mortgaged for the sum of $6,734.93,
principal and interest, to the respondent *Jane Gittings,* ob-
tained through the former and his wife the following agree-
ment:

"Whereas, the construction of a railway is contemplated on
a line which, as now located, crosses the land hereinafter de-
scribed.

"Now, therefore, to aid in securing the location and construction thereof, and in consideration thereof, and of one dollar to me in hand paid, the receipt of which is hereby acknowledged, I do hereby covenant and agree for myself, my heirs, executors, administrators and assigns, to sell to *Milwaukee & State Line Railway Company* and assigns, a strip of land 120 feet in width, being 60 feet in width on each side of the center line of said railway, as located across my land in section 27 of township 4 N. range 22 E. in Racine county, state of Wisconsin, being the south ½ northeast ¼ of southwest ¼ sec. 26 and south ½ N. ½ S. E. ¼ sec. 27, and southwest ¼ S. E. ¼ sec. 27 of said section, hereby giving full power to said railway company or assigns, on the definite location of said railway, to enter upon the land and premises of the width aforesaid, and occupy, use and control the same, and construct said railroad thereon.

"And I further covenant, and agree, for myself, my heirs, executors, administrators and assigns, that upon the demand of said railway company or assigns, at any time within six months after the line of said railway has been definitely located across said land, I will convey to the said railway company or assigns, by warranty deed free and clear of all incumbrances and liens, the said strip of land; and will in and by said deed or by some other good and sufficient instrument, release and discharge said railway company or assigns from all claims for damages to my land by reason of the construction, operation and maintenance of said railway, all for the sum of twelve hundred and fifty ($1,250) dollars to be paid to me upon delivery of said deed.

"Provided, that this agreement is upon the express condition that the said railway shall be built across my said land. Owner to have one farm grade crossing.

"Should said railway not be constructed across my said land, then this agreement shall be null and void.

"Witness my hand and seal this 19 day of June, A. D. 1905.

"JACOB STAMNES.  [Seal.]

"ANNA STAMNES.  [Seal.]

"In presence of David G. Janes."

Appellant notwithstanding having obtained such writing proceeded to obtain its desired right of way by condemnation

proceedings, making the owner and mortgagee parties. In such proceedings an award of $2,000 was made for the value of the land taken and damages to the land not taken. There was a contest before such commissioners, carried on mainly by the mortgagee against the appellant, in which *Jacob Stamnes* admitted having made the writing referred to and testified that he considered $1,250 would cover the damages to his property not taken and the value of the land for the right of way. The railway company appealed from the decision of the commissioners to the circuit court. On a trial of the matter there had, appellant offered the contract before mentioned in evidence, and also offered to show what *Stamnes* testified before the commissioners, as affecting his interest, and as a bar to any recovery as to him exceeding $1,250. He was interrogated on the subject, as was also the stenographer who took his evidence on the first hearing. The contract and what he so testified to were rejected upon respondents' objection. The contest as against the appellant was carried on as before by the mortgagee. The jury on evidence tending to establish the same found that the value of the whole property affected by taking the right of way was $10,966.20, and that the value of the land taken and the damages to the land not taken was $2,400. Due exceptions were taken to the rulings of the court above mentioned. After verdict such proceedings were had as would preserve for consideration upon appeal the questions discussed in the opinion. Judgment was rendered in accordance with the verdict, from which judgment this appeal was taken.

*Edward M. Hyzer,* for the appellant.

For the respondents there was a brief by *Gittins & Burgess,* and oral argument by *E. E. Gittins* and *Roy Burgess.*

The following opinion was filed October 9, 1906:

MARSHALL, J. Counsel for appellant seems to concede, as the fact is, that the mortgage security could not be really im-

paired so as to bind the mortgagee by any mere agreement between the railway company and the mortgagor, or by any appraisal in condemnation proceedings without substituting for that taken a money equivalent, the mortgagee having an opportunity to be heard. The taking that must thus be made good to the mortgagee obviously covered the whole injury to the estate, not the mere value of the strip of land to be occupied by the right of way. That is what the statutes contemplate, sec. 1848, Stats. (1898), in providing that all parties interested in the condemnation proceedings must be notified, and impliedly must have leave to participate in such proceedings, and sec. 1853, Stats. (1898), providing for proceedings in favor of the mortgagee in case of a railway company obtaining title to real estate subject to a mortgage lien without having provided therefor. See, also, *Kennedy v. M. & St. P. R. Co.* 22 Wis. 581; *Aspinwall v. C. & N. W. R. Co.* 41 Wis. 474. We do not overlook the fact that sec. 1848 provides that in condemnation proceedings there shall be appraised the value of the land proposed to be taken and the damages that will be suffered by the owner by reason of the taking, but it seems plain that the term "damages to the owner" means the diminution of the value of the land not taken by direct injury thereto as to the whole ownership therein, legal and equitable. It has been held elsewhere under a system quite similar to ours that the award takes the place of the land as regards the mortgage (*Platt v. Bright,* 31 N. J. Eq. 81), and that the award in the condemnation proceedings is indivisible, covering the entire value of the land actually appropriated and the injury to the land not taken,—in other words, the entire injury to the estate by the exercise of the right of eminent domain. *Bright v. Platt,* 32 N. J. Eq. 362, 370. The foregoing is in accord with many authorities that might be cited. The following relate to the matter: *Utter v. Richmond,* 112 N. Y. 610, 613, 20 N. E. 554; *In re Eleventh Ave.* 81 N. Y. 436; *Baltimore & O. R. Co. v. Thompson,* 10 Md. 76; *Wood v. Westborough,*

140 Mass. 403, 5 N. E. 613; *Severin v. Cole,* 38 Iowa, 463; *Thompson v. C., S. F. & C. R. Co.* 110 Mo. 147, 19 S. W. 77; *Gerrard v. O., N. & B. H. R. Co.* 14 Neb. 270, 15 N. W. 231.

Two branches of appellant's argument, viz.: that the award is excessive and that the evidence of the mortgagor's declaration and the contract made with him before the commencement of the condemnation proceedings should have been admitted in evidence in order to bar any greater recovery as to him than $1,250, or at least to affect the amount of his recovery, are based on the theory that the mortgagee's interest could not be impaired so long as there was ample value left to secure him after the taking, if no larger sum was allowed as compensation therefor than the sum *Stamnes* had indicated would satisfy him. No authorities are cited to our attention to sustain either proposition. There are two seemingly conclusive answers to them. There could be, as we have before indicated, but one award. That was required to cover the whole value of the land to be occupied and the entire damages to the land not taken. It was not competent to make an award of one sum in favor of the mortgagee and another in favor of the mortgagor. The award as to the mortgagee was to take the place of the land taken, constructively or actually. The mortgagee had a contract right to the full benefit of the value covered by his mortgage till the mortgage indebtedness should be paid. No part of it could be legitimately taken from him without substituting therefor an equivalent. It was competent for him to stipulate for any amount of security he saw fit, and what he obtained it was not competent for the court to diminish without substituting the just compensation therefor contemplated by the constitution.

The contract made with the mortgagor before the condemnation proceedings were commenced, it seems, was, as respondent claims, a mere option agreement which appellant elected to abandon by commencing the condemnation proceedings. So, in any event, when such contract was offered in evidence as a

bar to any greater recovery as to the mortgagor than $1,250, it was properly rejected.

The law is familiar that the admissions of one of several persons jointly interested may be given in evidence as against all. That relates to situations where the one making the admission has a right to speak in some respects as agent for all. It does not apply to cases where there is a mere community of interest, or to situations where the one making the admission has no right whatever to speak for the others subsequently joined with him, as plaintiffs or defendants, in litigation respecting the subject involved. In those situations the admission is only admissible as evidence against the one making it. 1 Jones, Ev. § 254; *The New Orleans,* 106 U. S. 13, 1 Sup. Ct. 90; *Slaymaker v. Gundacker's Ex'rs,* 10 Serg. & R. 75; *Lane v. Doty,* 4 Barb. 530, 536; *McMillan v. McDill,* 110 Ill. 47; *Hammon v. Huntley,* 4 Cow. 493.

It would seem to be the logical result of the rule stated that where the admission, as here, sought to be established could not affect the right of the person making it without affecting the rights of others joined with him in the litigation it is not admissible at all, and such is the holding in the federal case cited and in *McMillan v. McDill, supra.* In the former in proceedings to determine for joint owners of a vessel damages caused thereto by another vessel, evidence of one of the owners given in another action was excluded, because not admissible as to the co-owners. In the latter case the subject is discussed at considerable length, it being stated as a general rule that where evidence of the declarations of one of several parties on the same side in litigation could only affect legitimately, in any event, himself and could not affect him without affecting his coparties it is not admissible. The reasoning of the court seems to cover fully the proposition before us. The court said:

"It was incompetent as against the other defendants, and as it could not affect the issue without affecting the other defendants it was in our judgment incompetent to go to the jury

on the issue involved. . . . If this was a case where a judg-ment could be rendered against one of the defendants without affecting the rights of the others there might be some ground for admitting in evidence the declarations as against the de-fendant who made them; but such is not the case. . . . Testi-mony which defeats one defendant—one devisee—defeats all, and a judgment against one necessarily defeats all. . . . If the admissions here could have gone to the jury and affected the rights of none but the one making them no error would have been committed, but such is not the case."

To the same effect is *Phelps v. Hartwell*, 1 Mass. 71, cited by the court in the opinion with numerous other authorities.

The foregoing covers all the matters presented for consid-eration by appellant. We have given particular attention to the claim that the damages awarded are excessive. It seems that such claim is based wholly on the ideas above disapproved that the interest of the mortgagor and that of the mortgagee are severable; that the former was willing to take $1,250 for all injury as to him by appellant's exercise of the right of emi-nent domain, and that so long as there was security enough left after the taking to satisfy the mortgage, the security was not impaired. It is not claimed but what there was evidence produced by the respondent mortgagee to sustain as large an award as that made. It follows that the judgment of the lower court must be affirmed.

*By the Court.*—So ordered.

The appellant moved for a rehearing, which, on December 4, 1906, was granted as to these propositions:

"The agreement with *Stamnes* being a valid contract made after the commencement of the condemnation proceedings:

"First, was it necessarily waived by prosecution of such proceedings?

"Second, if not so waived, was the agreement inadmissible in evidence for reasons stated in the opinion, but without prejudice to appellant's seeking a remedy for being compelled to pay for the right of way more than *Stamnes* agreed to take

therefor, through subrogation to the rights of the mortgagee to the amount of the excess?"

The cause was re-argued upon the above questions on February 19, 1907.

*Edward M. Hyzer,* for the appellant.

For the respondent there was a brief by *Gittins & Burgess,* and oral argument by *E. E. Gittins.*

The following opinion was filed March 19, 1907:

MARSHALL, J. Upon the former hearing it was held that the right-of-way agreement was an option which appellant elected to abandon by commencing the condemnation proceedings. That was assigned as one of the reasons for the conclusion that the agreement was not admissible in evidence. In reaching such conclusion it was assumed that the condemnation proceedings were initiated after the agreement was obtained, whereas they were commenced prior thereto. It is now argued on behalf of respondents that whether they were commenced before or after the agreement was made, the pursuit thereof thereafter constituted an election to thereby acquire the right of way and to abandon the option.

It may be that the pursuit of the condemnation proceedings, in view of the peculiar situation, might be regarded as less persuasive of an election to wholly abandon the option agreement, since it was in fact obtained during their pendency, than would be the case if such proceedings were commenced subsequent thereto, but we do not deem it necessary to discuss or decide the question.

It is the opinion of the court that the mere circumstance of appellant going on as it did with the condemnation proceedings, since it is plain that the mortgagee had a right to have an award made independently of the agreement with the mortgagor and insisted upon such right, did not necessarily constitute an election to waive all the rights as against the latter under the agreement. Whether there was such a waiver or

not may depend upon circumstances not appearing in the record of the trial and which were not relevant thereto. True, as a result of the condemnation proceedings appellant acquired its right of way. There was nothing left thereafter in respect to that matter which could be obtained under the agreement, but whether there was such a voluntary choice as to settling the question of the compensation to be paid for what was acquired and the resulting damages to lands not taken as to preclude appellant from any remedy for having been compelled to pay therefor a much larger sum than the mortgagor agreed to take, seems to be quite another question; one that has not been tried and one which, perhaps, it was not competent to try as an incident to the issue that was presented as to the mortgagee. Much might be said on this subject, but it is thought best to leave the matter as free as possible from anything not necessary to the decision of the main question on the appeal, which might prejudice the parties as to that which may form the subject matter of further judicial proceedings.

In short, it is the opinion of the court that whether all rights under the option agreement were waived by appellant was not necessarily involved in the trial resulting in the award complained of, and should not be determined upon this appeal, from the mere circumstance of its having pursued the condemnation proceedings after obtaining such agreement, concluding it from seeking such remedy as the law may afford against *Stamnes* or the property affected by the mortgage if it shall turn out that appellant preserved as against him some rights, legal or equitable, under such agreement. Whether appellant made an election fatal to its claiming any such rights, and if it did not what its remedy is to vindicate such rights, are matters not necessary or perhaps proper here to decide. The agreement was properly rejected when offered as evidence, entirely irrespective of whether it was still subsisting for some purpose.

The result of the foregoing is that the first proposition should be answered in the negative and the second in the affirmative, but without any suggestion that a remedy of the sort mentioned in the second proposition exists.

*By the Court.*—That part of the former decision in relation to the option agreement having been abandoned by the appellant is withdrawn, but otherwise such decision is adhered to. No costs will be allowed on the rehearing to either party.