# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP2383 |

| | |
|---|---|
| COMPLETE TITLE: | United America, LLC,<br>        Plaintiff-Respondent-Petitioner,<br>   v.<br>Wisconsin Department of Transportation,<br>        Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 392 Wis. 2d 335,944 N.W.2d 38
PDC No:2020 WI App 24 - Published

| | |
|---|---|
| OPINION FILED: | May 18, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 11, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Lincoln |
|   JUDGE: | Jay R. Tlusty |

JUSTICES:

DALLET, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, ROGGENSACK, HAGEDORN, and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Joseph R. Cincotta*, Milwaukee. There was an oral argument by *Joseph R. Cincotta.*

For the defendant-appellant, there was a brief filed by *Clayton P. Kawski,* assistant attorney general; with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Clayton P. Kawski.*

An amicus curiae brief was filed on behalf of Eminent Domain Services, LLC by *Erik S. Olsen* and *Andrew D. Weininger*, Madison.

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2018AP2383
(L.C. No. 2014CV78)

STATE OF WISCONSIN          :        IN SUPREME COURT

United America, LLC,

        Plaintiff-Respondent-Petitioner,

   v.

Wisconsin Department of Transportation,

        Defendant-Appellant.

**FILED**

**MAY 18, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

DALLET, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, ROGGENSACK, HAGEDORN, and KAROFSKY, JJ., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA FRANK DALLET, J. The Department of Transportation (DOT) changed the grade of a highway that abuts United America, LLC's property. As a result, access to United America's property became less convenient and that property's value decreased. The question here is whether such a diminution in property value qualifies as "damages to the lands" under Wis. Stat. § 32.18 (2017-18).[1] The court of appeals held that it does

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

not.[2]   We agree and therefore affirm the court of appeals' decision.

## I.  BACKGROUND

¶2   United America operated a gas station and convenience store on its land that abuts the intersection of Highway 51 and Northstar Road.[3]   A paved driveway connected to Northstar Road provided the only access to United America's facilities.[4] Customers traveling on Highway 51 patronized United America's business by turning onto Northstar Road at what was once an at-grade intersection.

¶3   That convenient access from Highway 51 to United America's facilities disappeared, however, when the DOT initiated a project to change the grade at the intersection, making Northstar Road a bridge over Highway 51.  Despite United America's requests for on- and off-ramps to maintain convenient access between Highway 51 and United America's facilities, the DOT declined to include those ramps, resulting in a longer, indirect route to reach United America's business.  Because of that added inconvenience, Highway 51 traffic largely stopped

---

[2] United Am., LLC v. DOT, 2020 WI App 24, 392 Wis. 2d 335, 944 N.W.2d 38 (reversing the judgment of the Lincoln County Circuit Court, the Honorable Jay R. Tlusty presided).

[3] United America's parcel is located in the Southwest corner of where Highway 51 (running North-South) and Northstar Road (running East-West) intersect.

[4] United America cannot directly access Highway 51 from its property because the previous property owner sold the property's direct access rights to the DOT.

patronizing United America's business. United America's revenue subsequently suffered and its property's value decreased. United America sought compensation from the DOT for that diminished property value under Wis. Stat. § 32.18. Section 32.18 requires the DOT, in the absence of a constitutional "taking,"[5] to pay landowners whose lands abut a change-of-grade project the value of "any damages to said lands occasioned by such change of grade." The DOT denied United America's claim.

¶4 United America timely commenced an action in the circuit court against DOT, alleging that Wis. Stat. § 32.18 entitled it to "damages to [its] lands, property, and property value[]" occasioned by the change in Northstar Road's grade. At the ensuing bench trial, United America and DOT introduced competing appraisals regarding United America's property value before and after the DOT's project. The circuit court entered judgment in favor of United America in the amount calculated by United America's expert appraisal. It concluded that the terms "any" and "occasioned" in § 32.18 indicate that the provision encompasses a broad range of compensable injuries, including "a diminution in the value of [United America]'s property due to a

---

[5] A constitutional taking occurs when a private property interest is converted to public use. Both the Wisconsin and federal constitutions require that the private owner be justly compensated for that conversion. See Wis. Const. art. I, § 13; U.S. Const. amend. V. United America does not argue that a taking occurred.

loss of convenient access to the flow of traffic from US Highway 51."

¶5   The DOT appealed and the court of appeals reversed. United Am., LLC v. DOT, 2020 WI App 24, 392 Wis. 2d 335, 944 N.W.2d 38.  The court of appeals concluded that, considering the context and this court's precedent predating enactment of Wis. Stat. § 32.18, the phrase "to said lands" plainly limits the scope of "any damages" to "structural or physical" injuries to the land itself.  Id., ¶¶14-25.  It reversed the circuit court's judgment because it determined that United America's diminished property value is not a structural or physical injury to its lands.  We granted United America's petition for review.

## II.  ANALYSIS

¶6   We review de novo the interpretation and application of Wis. Stat. § 32.18.  Moreschi v. Vill. of Williams Bay, 2020 WI 95, ¶13, 395 Wis. 2d 55, 935 N.W.2d 318.  We interpret statutes so as to give the legislature's chosen language its "full, proper, and intended effect."  State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  We do this by reading the operative terms in a manner consistent with either their specially defined meaning or, if not specially defined, their common, ordinary, and accepted meaning.  Id., ¶45; Wis. Stat. § 990.01(1).  Common meaning is derived in part from the statutory context in which the terms are used.  Kalal, 271 Wis. 2d 633, ¶46.  That includes the terms' usage in relation to the language of closely related statutes, see id., and how the court had interpreted those terms

4

prior to the legislature enacting the statute in question, see Strenke v. Hogner, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296.

¶7 We begin by identifying the disputed language. Section 32.18 provides:

> Where a . . . highway improvement project undertaken by the department of transportation . . . causes a change of the grade of such . . . highway in cases where such grade was not previously fixed by city, village or town ordinance, but does not require a taking of any abutting lands, the owner of such lands at the date of such change of grade may file with the department of transportation . . . a claim for any damages to said lands occasioned by such change of grade. . . . [Upon denial of that claim,] such owner may . . . commence an action against the department of transportation . . . to recover any damages to the lands shown to have resulted from such change of grade.

(Emphases added.) The parties agree that United America is an abutting landowner to a DOT project that caused a change in grade, that Northstar Road's grade was not previously fixed by municipal ordinance, that no taking occurred, and that the change of grade occasioned United America's diminution in value. Thus, we face a single issue of statutory interpretation: is a diminution in value a cognizable injury within the class of "damages to the lands"?

¶8 United America claims that it is and argues for a liberal reading of Wis. Stat. § 32.18. It accuses the court of appeals of ignoring the legislature's choice of the broad phrase "any damages" by impermissibly limiting that phrase to "structural or physical" damages. Similarly, United America

5

argues that the legislature's use of "occasioned" instead of the ostensibly narrower "caused" suggests that the legislature intended § 32.18 to cover a wider range of damages. United America also contends that § 32.18 should be interpreted liberally because of its apparent "remedial" nature. Lastly, United America urges that we read "damages" as a term of art that refers to monetary compensation and thus restricts § 32.18 to a class of monetary losses.

¶9 The DOT counters that United America's arguments miss the forest for the trees by focusing on the language surrounding the critical limiting phrase——"damages to the lands"——rather than that phrase itself. The DOT explains that the court of appeals did not add in the "structural or physical" limitation; that limitation is inherent in the plain meaning of "lands."

¶10 We conclude that the diminution in property value occasioned by a change in an abutting highway's grade is not an injury compensable under Wis. Stat. § 32.18 because such damages are not "damages to the lands." That conclusion follows from the text of § 32.18, particularly in light of the closely related Wis. Stat. § 32.09(4) and (6)(f), and is confirmed by these provisions' legislative history. We need not decide, as the court of appeals did, the full scope of "damages to the lands"; our conclusion that a property's diminution in value falls outside the scope of "damages to lands" suffices to resolve this case.

A

¶11 Under common law, a landowner cannot recover for consequential injuries, including a diminution in property value, resulting from the exercise of state police power, such as changing a highway's grade.[6]  See Nick v. State Highway Comm'n, 13 Wis. 2d 511, 514-15, 109 N.W.2d 71 (1961) (explaining that a diminution in value due to an exercise of state police power is not recoverable); Jantz v. DOT, 63 Wis. 2d 404, 409, 217 N.W.2d 266 (1974) (affirming that a change in grade is an exercise of police power for which consequential injuries are not compensable).  The legislature, however, has enacted limited and specific exceptions to that rule, including Wis. Stat. § 32.18.  Section 32.18 allows certain landowners (those abutting a highway change-of-grade project) to recover for certain consequential injuries (those "to the lands") occasioned by a change of grade.

¶12 Although the legislature did not define "lands," its definition of "property" in Wis. Stat. § 32.01(2) indicates that "lands" constitutes some smaller subset of "property."  Per § 32.01(2), "property" includes "estates in lands, fixtures[,] and personal property directly connected with lands."  That definition differentiates several elements of "property" by their relationship to "lands."  Estates in lands, for instance,

---

[6] The "police power" is the government's authority to act "in the interest of public safety, convenience[,] and the general welfare."  Nick v. State Highway Comm'n, 13 Wis. 2d 511, 513-14, 109 N.W.2d 71 (1961).

comprise the intangible interests one can have in lands.  See Restatement (First) of Property § 9 (1936).  Similarly, "personal property directly connected with lands" indicates that the legislature uses the term "lands" to denote a separate category than "personal property."  Thus, "lands" constitutes something narrower than "property," as the former does not cover the intangible estates in those lands or personal property.[7]

¶13  It follows then that "damages to the lands" is a narrower category of injuries than "damages to property."  That conclusion is borne out by comparing how the legislature uses those phrases differently in two closely related statutes, Wis. Stat. §§ 32.18 and 32.09(6)(f).  See, e.g., Augsburger v.

---

[7] Because the legislature specially defined "property" in Wis. Stat. ch. 32, we rely on that definition rather than the generic statutory definition in Wis. Stat. § 990.01.  See § 990.01 (instructing that the generic definitions therein are inapplicable when applying them "would produce a result inconsistent with" the otherwise manifest statutory meaning). But even if the generic definition of "property" controlled, it reveals that, among the different categories of property interests identified in its definition, "lands" denotes the narrowest subset.  See § 990.01(31); see also Earl P. Hopkins, Handbook on the Law of Real Property § 1, at 3 (1896).

Given the context of § 32.18, that same distinction differentiates "lands" from the generic statutory definition of "land."  See § 990.01(18).  While generally the plural includes the singular and vice versa, see Wis. Stat. § 990.001(1), here § 990.01(18) defines "land" as "includ[ing] lands," among other, broader subsets of property.  We therefore cannot ignore the textual clues indicating that, at least in this context, "lands" means something different than "land"——especially when ignoring those clues results in a circular definition.  See Solie v. Emp. Tr. Funds Bd., 2005 WI 42, ¶31 n.17, 279 Wis. 2d 615, 695 N.W.2d 463 (declining to adopt a circular interpretation of a statutory definition).

8

Homestead Mut. Ins. Co., 2014 WI 133, ¶17, 359 Wis. 2d 385, 856 N.W.2d 874 ("When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."). Both provisions provide a landowner whose lands abut a change-of-grade project the right to compensation for resulting injuries. But only § 32.09(6)(f), which applies when there is an accompanying taking, uses the broader category "property" in allowing for the recovery of "[d]amages to property." Section 32.18, on the other hand, applies only when there is no taking, and recovery is limited for "damages to the lands." As "lands" is narrower than "property," we understand this distinction to mean that the class of injuries compensable under § 32.18 is narrower than that compensable under § 32.09(6)(f).

¶14 That distinction is especially revealing here because, despite our precedent defining "damages to property" to include a property's diminution in value, the legislature opted for a different term in Wis. Stat. § 32.18. Roughly 40 years before the legislature enacted Wis. Stat. §§ 32.18 and 32.09(6)(f), we held that the language "any damages . . . to [an abutting landowner's] property" encompassed the "diminution in market value of [her] property" caused by a "deflection of travel with consequent loss of existing prospective patronage." Voigt v.

Milwaukee Cnty., 158 Wis. 666, 668-70, 149 N.W. 392 (1914).[8] No similar holding exists regarding "damages to the lands." And we presume that when the legislature enacted both §§ 32.18 and 32.09(6)(f), it did so with "full knowledge" of this difference in our case law. See Strenke, 279 Wis. 2d 52, ¶28. Thus, when the legislature simultaneously enacted those provisions but used the phrase "damages to property" in § 32.09(6)(f) and not § 32.18, one implication is that the legislature chose to compensate an owner's diminution in property value under the former but not the latter.

¶15 That inference is confirmed by the text of another closely related provision, Wis. Stat. § 32.09(4). Because the common law bars compensation for consequential injuries caused by an exercise of police power, a statute abrogating that rule must do so with "clear, unambiguous, and peremptory" language. E.g., Strenke, 279 Wis. 2d 52, ¶29. And, as we have held for over 175 years, we "strictly construe[]" those statues to

---

[8] We additionally recognize that the legislature did not opt for "damages to the owner," yet another phrase this court had held provides compensation for diminished property value. See Stamnes v. Milwaukee & S.L. Ry. Co., 131 Wis. 85, 88, 109 N.W. 100 (1906), modified on reh'g on other grounds, 131 Wis. 85, 111 N.W. 62 (1907).

minimize their effect on the common law.[9] See, e.g., Augsburger, 359 Wis. 2d 385, ¶17; Schaefer v. City of Fond du Lac, 99 Wis. 333, 341, 74 N.W. 810 (1898); Baxter v. Payne, 1 Pin. 501, 504 (Wis. Terr. 1845) (explaining that a law "being in derogation of the rules of the common law, has always been construed strictly"). The legislature did just that for takings, using clear, unambiguous, and peremptory language in § 32.09(4) to expressly identify those provisions that change the common law rule as well as how they change it: "If a depreciation in value of property results from an exercise of the police power, . . . no compensation may be paid for such depreciation except as expressly allowed in [Wis. Stat. § 32.09](5)(b) and (6) and [Wis. Stat. §] 32.19." (Emphasis added.). Predictably on that list, given our Voigt decision, is § 32.09(6)(f), which compensates "[d]amages to property."

¶16 Yet no similar provision exists for a diminution in value in non-taking scenarios; nowhere does any statute identify Wis. Stat. § 32.18 as abrogating the common law in that specific manner. The legislature knows how to use clear, unambiguous,

---

[9] The dissent ignores this nearly two centuries' worth of law and it cites no Wisconsin case to the contrary. The dissent relies on one extrinsic source that is, ironically, consistent with our holding here and contrary to the dissent's position. See Antonin Scalia & Bryan A. Garner, Reading Law 318 (2012) (arguing, consistent with our jurisprudence, that statutes should "not be interpreted as changing the common law unless they effect the change with clarity"); id. at 364-66 (arguing, contrary to the dissent, that remedial statutes should not be liberally construed because that approach "needlessly invites judicial lawmaking" and is "impossible" to apply).

11

and peremptory language to change the common law rule regarding a diminution in value——it did so in the closely related Wis. Stat. § 32.09(4)——but it chose not to in § 32.18. See Strenke, 279 Wis. 2d 52, ¶29; Piper v. Jones Dairy Farm, 2020 WI 28, ¶28, 390 Wis. 2d 762, 940 N.W.2d 701. Thus, we strictly construe § 32.18 to abrogate the common law only with respect to consequential "damages to the lands," while leaving intact the common law rule barring compensation for a diminution in property value. See Nick, 13 Wis. 2d at 514-15; Strenke, 279 Wis. 2d 52, ¶29.

¶17 To summarize our plain-meaning analysis, the legislature indicated in two ways that Wis. Stat. § 32.18 excludes from its specified class of compensable injuries a property's diminution in value. First, instead of using "damages to property," which we have said includes a property's diminution in value, it used the narrower phrase "damages to the lands." Second, the legislature made no clear, unambiguous, and peremptory statement that § 32.18 abrogates the common law with respect to compensation for a property's diminution in value. Therefore, we conclude that an abutting landowner is not entitled to compensation for its diminution in property value under § 32.18.

B

¶18 Although our plain-meaning interpretation of Wis. Stat. § 32.18 fully resolves our interpretive inquiry, we nevertheless note that legislative history confirms its plain meaning. See, e.g., Kalal, 271 Wis. 2d 633, ¶51 ("[L]egislative

12

history is sometimes consulted to confirm or verify a plain-meaning interpretation."); Westmas v. Creekside Tree Serv., Inc., 2018 WI 12, ¶¶20, 49, 379 Wis. 2d 471, 907 N.W.2d 68. Indeed, the history behind the enacted language in Wis. Stat. §§ 32.09(4), 32.09(6)(f), and 32.18 confirms that § 32.18 excludes from its ambit a property's diminution in value. This statutory trio came about as part of a legislative proposal from an executive study committee that studied the "whole problem of land acquisition."[10] The committee's proposal codified the common law rule that prohibited compensation for "a depreciation in value of property result[ing] from an exercise of the police power." The legislature enacted that provision verbatim as § 32.09(4). See § 1, ch. 639, Laws of 1960. The proposal also contained an exception to this general prohibition that would allow, among other things, abutting landowners to recover for "damage [of any kind] due to change of grade whether or not accompanied by a taking of land." (Emphasis added.) Thus, as proposed, a landowner in United America's situation could have recovered its diminished property value.

¶19 The legislature, however, altered that result by deviating from the proposal in three significant ways. See id.

---

[10] The proposal came from Governor Vernon Thomson's Study Committee on the Problems of Land Acquisition, a group tasked with studying "the whole problem of land acquisition with particular attention to condemnation procedure, and methods of determining damages suffered by those called upon to surrender their property for the public good." Wisconsin Blue Book 791 (1958).

13

First, instead of one provision that applied whether or not a taking occurred, the legislature enacted Wis. Stat. § 32.18 to address any change of grade unaccompanied by a taking of land and Wis. Stat. § 32.09(6)(f)[11] for grade changes involving a taking. Second, instead of allowing compensation for "damages" generally, the legislature identified two specific classes of compensable injuries and split those distinct classes between the new provisions: "[d]amage to property" in § 32.09(6)(f) and the narrower "damages to . . . lands" in § 32.18. See id. The legislature's third deviation was its decision to "expressly allow[]" compensation for a diminution in property value only where there is a taking of land and only under the list of provisions set forth in § 32.09(4). These deviations demonstrate that both the absence of a provision similar to § 32.09(4) expressly identifying § 32.18 as abrogating the common law regarding compensation for a diminution in value and the distinction between "[d]amages to property" and "damages to the lands" were deliberate legislative choices. And each choice confirms our plain-meaning conclusion that a property's

---

[11] Wisconsin Stat. § 32.09(6)(f) was originally enacted as Wis. Stat. § 32.09(5)(g) (1959-60), but aside from a renumbering, the provision remains unchanged.

14

diminution in value falls outside the class of consequential "damages to the lands" compensable under § 32.18.[12]

C

¶20 United America's textual argument to the contrary incorrectly focuses on the general term "any damages" while ignoring the limiting phrase "to the lands." Although "any damages," without context, appears to express a general lack of "distinction or limitation" on the type of compensable injuries, the text of Wis. Stat. § 32.18 limits the class of compensable injuries to "any damages <u>to the lands</u>" (emphasis added). See Any, <u>Oxford English Dictionary</u> (3d ed. 2016) (defining the adjective "any" as referring "to a member of a <u>particular group or class</u> without distinction or limitation" (emphasis added)).[13] Thus, under § 32.18, United America may recover any and all damages occasioned by the DOT's change-of-grade project, provided that those damages are to United America's lands. And,

---

[12] Neither <u>Jantz v. DOT</u>, 63 Wis. 2d 404, 217 N.W.2d 266 (1974), nor <u>118th Street Kenosha, LLC v. DOT</u>, 2014 WI 125, 359 Wis. 2d 30, 856 N.W.2d 486, alter this conclusion because neither case interpreted or applied Wis. Stat. § 32.18. In <u>Jantz</u>, we merely acknowledged that the plaintiff's claim for damages caused by a non-taking change of grade belonged under § 32.18; we said nothing about whether such a claim would actually succeed under that statute. 63 Wis. 2d at 411. In <u>118th Street Kenosha</u>, we speculated that a property's diminution in value "perhaps may" be compensable under § 32.18, but nowhere in that case did we actually interpret § 32.18 as definitively allowing such compensation. 359 Wis. 2d 30, ¶48 n.16. Thus neither case controls here.

[13] "We rely on dictionary definitions when the legislature fails to provide a definition in the statute." <u>State v. A.L.</u>, 2019 WI 20, ¶16, 385 Wis. 2d 612, 923 N.W.2d 827.

as discussed above, "damages to the lands" does not include diminished property value. In other words, the presence of "any" does not allow us to read out of the statute the explicit limitation the legislature put into it. See State v. A.L., 2019 WI 20, ¶20, 385 Wis. 2d 612, 923 N.W.2d 827. For similar reasons, we reject United America's arguments regarding "occasioned," "damages," and the statute's supposed remedial nature. None of these arguments help us interpret the narrow issue of whether a diminution in property value falls within the class of "damages to the lands."[14]

D

¶21 Given the plain meaning of Wis. Stat. § 32.18, its application to United America's claim is straightforward. United America seeks compensation only under § 32.18 and only for the diminution in its property value. A property's diminution in value, however, is not compensable under § 32.18. Therefore, United America's claim fails.

---

[14] We also reject United America's "flow of traffic" and "indirect access" arguments. United America's attempt to reframe its injury as a lost right to the flow of Highway 51's traffic fails because there is no such right. See Schneider v. Div. of Highways, 51 Wis. 2d 458, 463, 187 N.W.2d 172 (1971) ("[T]here is no property right to the flow of traffic [along a highway]."). United America also has no "indirect access" claim because its predecessor received compensation for the property's direct access rights to Highway 51. Cf. id. (explaining that when a property's direct access to a highway is extinguished, reasonable indirect access must be provided unless the owner receives just compensation).

16

### III.  CONCLUSION

¶22  We conclude that the plain meaning of "damages to the lands" in Wis. Stat. § 32.18 does not encompass United America's diminution in property value.  Accordingly, we affirm the court of appeals' decision.

*By the Court.*—The decision of the court of appeals is affirmed.

¶23 REBECCA GRASSL BRADLEY, J. *(dissenting).* "The fundamental maxims of a free government seem to require; that the rights of personal liberty and private property, <u>should be held sacred</u>." <u>Wilkinson v. Leland</u>, 27 U.S. 627, 634 (1829) (Story, J.) (emphasis added). Ignoring the plain text of Wis. Stat. § 32.18, the majority delivers a troubling blow to the statutory rights of Wisconsin's property owners. According to the majority, if the Department of Transportation (DOT) causes a change of grade on the state's highways, abutting landowners are left without any recourse or compensation when DOT's actions eviscerate the value of their property. The majority's interpretation misreads § 32.18 and erases the statutory rights of landowners in the process. Properly interpreted, when DOT causes a change of grade that diminishes a landowner's property value on abutting land, § 32.18 allows landowners to collect compensatory damages. Accordingly, United America was entitled to the circuit court's full award of damages. I respectfully dissent.

I

¶24 In 2004, Raj Bhandari, through his limited-liability company United America, entered into a land contract for the purchase of real estate abutting the intersection of Highway 51 and Northstar Road in Lincoln County. For a number of years, United America operated a gas station and convenience store on the property where the at-grade intersection allowed for direct vehicle access to and from Highway 51 and Northstar Road. The at-grade roads facilitated convenient entrance to United

1

America's business. In 2006, before deciding whether to fully pay off the land contract and remain on the property, Bhandari contacted a representative at DOT to ask whether it had any plans to change the intersection. The representative responded that a change in the intersection would not happen in Bhandari's lifetime or in the representative's lifetime.[1]

¶25 Despite DOT's assurances to Bhandari, in 2013 DOT began a highway improvement project, which ultimately changed the grade at the Highway 51/Northstar Road intersection and converted Northstar Road to a bridge over Highway 51. DOT refused to provide for on- and off-ramps that would preserve convenient access to United America's business at the intersection, despite Bhandari imploring DOT to do so. As a result, individuals attempting to access United America's gas station and convenience store from Highway 51 were forced to take a circuitous route and drive miles out of the way to reach United America's property. United America's business suffered a dramatic loss of revenue, and the value of its property plummeted.

¶26 Pursuant to Wis. Stat. § 32.18, United America timely filed a claim with DOT requesting to be compensated for its

---

[1] Both before and after Bhandari purchased the property, DOT wrote letters to Lincoln County commissioners and a Town of Merrill chairman stating that it had plans to change the intersection. However, the circuit court concluded that "it was not convinced that any type of due diligence search by Mr. Bhandari regarding the subject intersection would have revealed [these prior letters]."

2

damages. Absent a taking of land,[2] § 32.18 requires DOT to pay abutting landowners "for any damages" to their lands resulting from a DOT change-of-grade project. DOT denied United America's claim, and United America later filed suit in the Lincoln County Circuit Court. After a bench trial, the circuit court ruled in favor of United America. The circuit court concluded that § 32.18 allows United America to recover for the diminution in its property value resulting from DOT's change of grade at the Highway 51/Northstar Road intersection. The circuit court determined:

> [T]he subject lands were damaged as a result of the change of grade to the highway abutting the property, and not by the DOT's use of police power to control the flow of traffic along its right of way. . . . The decisions of the DOT to change the grade of the highway abutting the Plaintiff's property, and not include exit and entrance ramps resulted in damages to the Plaintiff's property, through a diminution in the value of the Plaintiff's property due to a loss of convenient access to the flow of traffic from US Highway 51. These were clearly foreseeable damages when the DOT made its decisions regarding the highway improvement project.

The circuit court found that United America suffered $528,500 in damages due to DOT's change-of-grade project. Specifically, United America's "before-value" was $600,000, but its "after-value" following DOT's change-of-grade project sank to $71,500. The circuit court arrived at this determination with the benefit of a "substantial amount of . . . financial information provided

---

[2] The parties agree there was no taking of land in this case.

3

to the Court through appraisals," finding United America's appraiser to be the "most credible."

¶27 DOT appealed the decision and the court of appeals reversed, concluding that Wis. Stat. § 32.18 allows landowners to recover only "structural damages" to their land resulting from a change-of-grade project. According to the court of appeals, because United America's loss in property value from DOT's change of grade did not qualify as "physical" or "structural" loss, the circuit court's award must be vacated. Without endorsing its reasoning, the majority nevertheless affirms the court of appeals decision, concluding that "a property's diminution in value falls outside the scope of 'damages to lands.'" Majority op., ¶10. The majority errs.

II

¶28 In relevant part, Wis. Stat. § 32.18 reads:

Where a street or highway improvement project undertaken by the department of transportation . . . causes a change of the grade of [a] street or highway in cases where such grade was not previously fixed by city, village or town ordinance, but does not require a taking of any abutting lands, the owner of such lands at the date of such change of grade may file with the department of transportation . . . a claim for <u>any damages to said lands occasioned by such change of grade</u>. . . . [If DOT denies the claim], such owner may within 90 days following such denial commence an action against [DOT] . . . to recover <u>any damages to the lands shown to have resulted from such change of grade</u>.

(Emphasis added.) The majority reads the text of this statute in an insupportably strained and narrow manner. According to the majority, United America's diminution in property value does not qualify as "damages to the lands" under § 32.18; therefore,

4

United America cannot recover any losses occasioned by DOT's change-of-grade project.  See majority op., ¶1.  Contrary to the majority's holding, § 32.18 allows landowners to recover "any damages to the lands" resulting from a DOT change-of-grade project, and nothing in the statutory text restricts a landowner's recovery to "structural" or "physical" losses as the court of appeals concluded, nor does the text foreclose the recovery of damages for diminution in property value.  § 32.18 (emphasis added).  Accordingly, the circuit court properly awarded damages to United America for DOT's change of grade at the Highway 51/Northstar Road intersection.[3]

¶29 Resolution of this case rests upon the interpretation of two key statutory phrases:  (1) "any damages," and (2) "to the lands."  "[S]tatutory interpretation begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry."  State ex rel. Kalal v.

---

[3] For purposes of this case, there are two operative phrases in Wis. Stat. § 32.18:  the phrase "any damages to said lands occasioned by such change of grade," and the phrase "any damages to the lands shown to have resulted from such change of grade." Under § 32.18, the former phrase pertains to a landowner's statutory right to file a claim for damages with DOT after a change of grade, whereas the latter phrase pertains to a landowner's right to "commence an action" in circuit court when DOT denies a claim.  Both phrases similarly employ the operative language "any damages to lands."  Given that neither party disputes that DOT's change-of-grade project caused United America's diminution in property value, there is no reason to differentiate between the phrases "occasioned by" and "resulted from."  Both phrases clearly contemplate a causal connection between the landowner's damages and DOT's change-of-grade project——which is present in this case.  My analysis focuses upon the phrase "any damages to the lands," the meaning of which constitutes the crux of the statutory question before the court.

5

Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Under its most reasonable interpretation, the phrase "any damages" means precisely what it says: "any damages," without exception. Wis. Stat. § 32.18 (emphasis added). "Damages" means any "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." Damages, Black's Law Dictionary 488 (11th ed. 2019) (emphasis added); see Kalal, 271 Wis. 2d 633, ¶53 (instructing courts to turn to dictionary definitions to ascertain the plain meaning of a statute).

¶30 As a general matter, "loss" is commonly understood as "the disappearance or diminution of value." Loss, Black's Law Dictionary 1132 (11th ed. 2019) (emphasis added). "Damages" broadly includes compensation for a "loss," which includes the "diminution of value" of an individual's property, both real and personal. The purpose of compensating an individual for loss is to "make whole the damage or injury suffered by the injured party." See White v. Benkowski, 37 Wis. 2d 285, 290, 155 N.W.2d 74 (1967). As this court explained decades ago regarding land rights, "the measure of damages . . . will be the difference between the present value of the land and its value as affected by the execution of the proposed projects"——in this case, DOT's change-of-grade project. State v. Adelmeyer, 221 Wis. 246, 262-63, 265 N.W. 838 (1936).

¶31 While the statutory meaning of "damages" is broad, it is not unlimited. "Any" damages must be "to the lands" in order to be recoverable under Wis. Stat. § 32.18. The meaning of

"any" refers to "any one of the sort named." Any, Oxford English Dictionary 94 (6th ed. 2007). Under the plain meaning of the statutory language, any and all types of damages to the lands are recoverable. Had the legislature wanted to limit the meaning of "damages" solely to "structural damages," as the court of appeals decided, or to exclude diminution-in-value damages as the majority holds, it certainly could have. See Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶36, 341 Wis. 2d 607, 815 N.W.2d 367. But it did not; instead, it expressly stated that "any damages" are recoverable——nothing less.

¶32 The majority improperly reads an exception into the text in order to narrow the meaning of "any damages." Doing so violates the general-terms canon of statutory construction, under which "[g]eneral terms are to be given their general meaning." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012); Benson v. City of Madison, 2017 WI 65, ¶25, 376 Wis. 2d 35, 897 N.W.2d 16. Under this canon, "general words (like all words, general or not) are to be accorded their full and fair scope. They are not to be arbitrarily limited." Scalia & Garner, supra, at 101. "[T]he presumed point of using general words is to produce general coverage——not to leave room for courts to recognize ad hoc exceptions." Id. Unlike the court of appeals, the majority in this case deems it unnecessary to decide "the full scope of 'damages to the lands.'" Majority op., ¶10. Nevertheless, it arbitrarily construes "any damages" to exclude "a property's

7

diminution in value." Id. There is no textual basis to support this exclusion.

¶33 The error of the majority's circumscription of the statutory text is illustrated by another case in which the federal courts interpreted a similarly broadly-worded statute "allowing the government to seize 'any property, including money,' that had been used for an illegal gambling business." Scalia & Garner, supra, at 103 (citing United States v. South Half of Lot 7 & Lot 8, Block 14, Kountze's 3rd Addition to the City of Omaha, 910 F.2d 488 (8th Cir. 1990)). In that case, the government initiated forfeiture actions against real estate allegedly used for an illegal gambling business. South Half, 910 F.2d at 489. The trial court construed "any property" to exclude real property but the appellate court disagreed, holding that "any property" means "any property." Id. Similar to the majority in this case, the dissent in South Half "would have held that the clear language meant something other than what it said, based in part on legislative history[.]" Scalia & Garner, supra, at 103.

¶34 While the scope of "any damages" recoverable under Wis. Stat. § 32.18 is textually unlimited, claimed damages must correspond "to the lands" affected by DOT's change-of-grade project. "Land" has a specific meaning under the Wisconsin Statutes. Although it is not defined in Chapter 32, under Wis. Stat. § 990.01(18), "land" means "lands, tenements and hereditaments and all rights thereto and interests therein." (emphasis added). Contrary to the court of appeals' conclusion

8

in this case, "lands" means more than just the physical, terra firma of the land; it includes the "rights thereto and interests therein" as well. See Tenements, Black's Law Dictionary 1771 (19th. ed. 2019) ("an estate or holding of land"); Hereditaments, Black's Law Dictionary 872 (19th ed. 2019) ("real property"); Land, Black's Law Dictionary 1048 (19th ed. 2019) ("an estate or interest in real property."). And contrary to the majority's holding, nothing in § 32.18 excludes diminution in value——an interest in the lands——from recoverable damages. Accordingly, the relevant question for this court is not simply whether DOT's change-of-grade project caused harm to the physical structure of United America's land itself, but whether the project caused "any damage" to the lands, including "rights thereto and interests therein."

¶35 The majority brushes off Wis. Stat. § 990.01(18)'s definition of "land" in a footnote. Rather than analyzing it, the majority dismisses the statutory command to construe "lands" as the legislature defined it as somehow "circular" and "inconsistent with the otherwise manifest statutory meaning." Majority op., ¶12 n.7 (internal quotations omitted). The majority neglects to explain how the definition of "land" in § 990.01(18) contravenes "the otherwise manifest statutory meaning." The majority's rejection of the statutory definition of "land" as "circular" because it includes "lands" also spurns the legislative directive that "[i]n construing Wisconsin laws the following rules shall be observed . . . : The singular includes the plural and the plural includes the singular." Wis.

9

Stat. § 990.001(1). Regardless, the majority altogether ignores the operative language of the definition of "land" pertinent to this case: "land" (which includes "lands") encompasses "rights thereto and interests therein" and the value of the land is indisputably one of the "interests therein" rendering its diminution a damage recoverable under Wis. Stat. § 32.18.

¶36 In both instances, the majority violates the interpretive-direction canon, under which "[d]efinition sections and interpretation clauses are to be carefully followed." Scalia & Garner, supra, at 225; see Wisconsin Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶6, 270 Wis. 2d 318, 677 N.W.2d 612 (modified by statute on other grounds) ("Words that are defined in the statute are given the definition that the legislature has provided."). "It is very rare that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is virtually conclusive." Scalia & Garner, supra, at 228. While the legislature's definition of "lands" may be inconvenient for the majority's analysis, that does not give the majority license to ignore it.

¶37 Applying the statutory definition of "lands," the dramatic loss in the value of United America's property constitutes "damage" to the "lands"——specifically, an "interest[] therein." Wisconsin Stat. § 32.18 requires DOT to pay a landowner for "any damages" to "lands" as a result of a DOT change-of-grade project, and diminution in land value falls well within the meaning of "damages." See Jantz v. DOT, 63

10

Wis. 2d 404, 411, 217 N.W.2d 266 (1974) (noting that, under § 32.18, compensable damages could include "loss of view, loss of direct access, loss of income, and change of grade"). As the circuit court determined, United America's property had been valued at $600,000 prior to DOT's change-of-grade project, but plummeted to a value of $71,500 upon project completion, resulting in a loss in value of $528,500. Under the plain text of § 32.18, United America may recover the full value of the circuit court's award.

¶38 Rather than applying the plain language of Wis. Stat. § 32.18, the majority adopts an interpretation crafted by comparisons to a "closely related provision" in Wis. Stat. § 32.09(6)(f), which allows compensation for "damages to property" due to a change of grade resulting in a partial taking. According to the majority, because the legislature used the phrase "damages to property" in § 32.09(6)(f) instead of "damages to lands" as found in § 32.18, the legislature must have afforded diminution-in-value damages only under the former. See majority op., ¶14. The majority offers scant support for this conclusion, beyond its mere declaration that it is so. Section 32.09(6)(f) concerns "all matters involving the determination of just compensation in eminent domain proceedings"——that is, when there is a taking. (Emphasis added). Matter of Condemnation by Redevelopment Auth. of City of Green Bay, 120 Wis. 2d 402, 409, 355 N.W.2d 240 (1984) (describing eminent domain as a process where an owner's property "is taken against his or her will"). By contrast,

11

§ 32.18 compensates landowners for damages when there is <u>not</u> a taking. <u>See</u> § 32.18 (stating that it applies only when DOT "does not require a taking of any abutting lands"). As we have plainly established, "Section 32.18 . . . merely provides a cause of action for damages; <u>it does not bring the proceedings into the area of eminent domain</u>. The concept of 'just compensation' . . . applies to condemnation proceedings, and has no application to a statutory action for damages for change of grade commenced pursuant to the provisions of [section] 32.18." <u>Klingseisen v. Wisconsin State Highway Comm'n</u>, 22 Wis. 2d 364, 368, 126 N.W.2d 40 (1964). Accordingly, § 32.09 and its reference to "damages to property" in the context of a taking cannot inform the meaning of "damages to the lands" occasioned by government action other than a taking.

¶39 The majority makes the same mistake in relying upon Wis. Stat. § 32.09(4). That statute states that "[i]f a depreciation in value of property results from an exercise of the police power, even though in conjunction with taking by eminent domain, no compensation may be paid for such depreciation except as expressly allowed in subs. (5)(b) and (6) and s. 32.19." § 32.09(4). Just like § 32.09(6)(f), § 32.09(4) applies only "[i]n all matters involving the determination of just compensation <u>in eminent domain proceedings</u>" and has no application whatsoever to a statute creating a right of action where no land is taken. § 32.09 (emphasis added). Because § 32.09 provides the rules governing the determination of just compensation in eminent domain proceedings only, it simply has

12

no bearing on the interpretation of Wis. Stat. § 32.18, which governs claims for damages caused by changes of grade where no land is taken. See Klingseisen, 22 Wis. 2d at 368. The majority's resort to takings statutes as a mechanism for interpreting § 32.18 fails to buttress its analysis and only compounds the majority's error.

¶40 The majority's statutory analysis takes a circuitous path, meandering into eminent domain statutes that have no application in the absence of a taking, in order to interpret "any damages to lands" to mean something other than what it plainly says. This methodology violates the ordinary-meaning canon of statutory interpretation, "the most fundamental semantic rule of interpretation." Scalia & Garner, supra, at 69. "Words are to be understood in their ordinary, everyday meanings——unless the context indicates that they bear a technical sense." Id.; see Wisconsin Ass'n of State Prosecutors v. WERC, 2018 WI 17, ¶52, 380 Wis. 2d 1, 907 N.W.2d 425. Statutes, like "all other legal instruments" are "of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings." Scalia & Garner, supra, at 69 (quoting Joseph Story, Commentaries on the Constitution of the United States 157-58 (1833)). Judges "should not make" interpretation "gratuitously roundabout and complex." Id. at 70. To the detriment of property owners, the majority adopts a complicated and roundabout analysis that suffocates the ordinary meaning of the statutory words. Much of the majority's analysis altogether

13

avoids the plain language of Wis. Stat. § 32.18, which says "any damages to the lands," plainly encompassing diminution in property value as an interest in "the lands" as statutorily defined.

¶41 This conclusion fully squares with our prior cases. In Jantz, a property owner brought suit when the state highway department took .38 acres of land to widen Highway 41-45 in Washington County and changed the grade of Maple Road in order to build an overpass across Highway 41-45. Jantz, 63 Wis. 2d at 407-08. Jantz owned a bar and grill abutting Highway 41-45 and Maple Road, and the value of her property suffered as a result of DOT's project. Importantly, Jantz did not bring suit under Wis. Stat. § 32.18 but instead under Wis. Stat. § 32.09(6). See id. at 409-11. This court held that Jantz could not recover under § 32.09(6) in the absence of a "constructive taking"; therefore, Jantz could not collect damages related to "loss of view, loss of income, and circuity of access due to the . . . change of grade of Maple Road." Id. at 411-12. Notably, however, the Jantz court identified § 32.18 as the proper basis for Jantz's claim for these damages. In relevant part, the court explained:

> [Section] 32.18 applies as to any claim for damages due to change of grade of Maple Road. . . . Claims of compensable damages due to loss of view, loss of direct access, loss of income and change of grade were based on the before-taking and after-taking test under sec. 32.09(6). That test does not apply because sec. 32.09(6) does not apply. . . . If appellant qualified as an owner of abutting property to the relocated Maple Road, any claim for damages caused by the change of grade of Maple Road would lie under the provisions of sec. 32.18.

14

Id. at 411 (emphasis added) (citations omitted). In other words, Jantz's claim should have been brought under § 32.18, which serves as the basis for "any claims for damages due to change of grade," including Jantz's claim for economic damages arising from the loss of direct access to her property. Id. (emphasis added).

¶42 This court reiterated this conclusion less than a decade ago. In 118th Street Kenosha, we explained that the Jantz court "excluded evidence that the circuity of access or change in grade reduced the value of Jantz's property" only because "the relocation of Maple Road was separate from the partial taking of land" pursuant to Wis. Stat. § 32.09(6). 118th Street Kenosha, LLC v. DOT, 2014 WI 125, ¶¶47-48, 359 Wis. 2d 30, 856 N.W.2d 486. Although § 32.09(6) did not allow the recovery of damages for diminution in value, "Jantz perhaps may have been entitled to recover damages under Wis. Stat. § 32.18 for harm to her property caused by Maple Road's change in grade." Id., ¶48 n.16. The majority in this case disavows these prior cases, which recognized a cognizable claim under § 32.18 for the diminution in property value due to a change of grade resulting from a DOT project.

¶43 Strangely, the majority insists that "nowhere does any statute identify Wis. Stat. § 32.18 as abrogating the common law" prohibition on "compensation for consequential injuries [a property's diminution in value] caused by an exercise of the police power." Majority op., ¶¶15-16. As the majority seemingly recognizes earlier in its opinion, § 32.18 does so

15

itself. Betraying the internal contradictions of its analysis, the majority notes that while "[u]nder common law, a landowner cannot recover for consequential injuries, including a diminution in property value resulting from the exercise of state police power" the legislature has in fact abrogated this common law rule——in § 32.18: "The legislature, however, has enacted limited and specific exceptions to that rule, including Wis. Stat. § 32.18." Majority op., ¶11 (emphasis added). The statutory text, using "clear, unambiguous and peremptory language" as the majority demands, allows a property owner to "recover any damages to the lands shown to have resulted from such change of grade." Majority op., ¶15. "Any damages" clearly and unambiguously encompasses diminution in property value. The majority absurdly believes the statute must say "this statute abrogates the common law," majority op., ¶16 ("nowhere does any statute identify Wis. Stat. § 32.18 as abrogating the common law"), but statutory changes to prior law "need not be express"——they need only be clear. Scalia & Garner, supra, at 318. With no explanation, the majority confidently declares that Wis. Stat. § 32.09(4) clearly abrogates the common law but § 32.18 somehow fails the majority's amorphous test of clarity. This is classic ipse dixit.

¶44 In the past, this court characterized Wis. Stat. § 32.18 as a remedial statute "that must be liberally construed to advance the remedy that the legislature intended to be afforded." Stuart v. Weisflog's Showroom Gallery, Inc., 2008 WI

16

22, ¶21, 308 Wis. 2d 103, 746 N.W.2d 762; Hughes v. Chrysler Motors Corp., 197 Wis. 2d 973, 979, 542 N.W.2d 148 (1996). The statute need not be construed "liberally" in order to discern its meaning; applying the fair reading approach outlined in Kalal, the court need only determine "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Scalia & Garner, supra, at 33. Instead, the majority opts to "strictly construe § 32.18," majority op., ¶16, embracing "a relic of the courts' historical hostility to the emergence of statutory law" which displaced judge-made law. Scalia & Garner, supra, at 318. It is, however, a "false notion that words should be strictly construed." Id. at 355. "If by strict one simply meant that the interpreter holds tight to the fair meaning of the law, then the doctrine would be sound." Id. Applying a discredited doctrine, the majority eschews the fair meaning of "any damages" in favor of "a narrow, crabbed reading" of the words. Id. In doing so, the majority "strangle[s] [its] meaning." Id. (citing Utah Junk Co. v. Porter, 328 U.S. 39, 44 (1946)).

¶45 Applying the plain meaning of the statutory language, "any damages to the lands" means precisely what it says, but the majority's interpretation of Wis. Stat. § 32.18 wrongly circumvents what the legislature wrote. "Property rights are necessary to preserve freedom, for property ownership empowers persons to shape and to plan their own destiny in a world where governments are always eager to do so for them." Adams Outdoor Advert. Ltd. P'ship v. City of Madison, 2018 WI 70, ¶47, 382

17

Wis. 2d 377, 914 N.W.2d 660 (Rebecca Grassl Bradley, J., dissenting) (quoting Murr v. Wisconsin, 137 S. Ct. 1933, 1943 (2017)).  Section 32.18 protects private property rights by compensating landowners when DOT causes their property values to plummet.  Because the majority's contrary interpretation impairs these rights in contravention of the plain meaning of § 32.18, I respectfully dissent.